IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD LEWIS,

                 Plaintiff,

  v.

MICHAEL STEPHEN,
THEODRE ANDERSON, and
BRYAN GERRY,

                 Defendants.

OPINION & ORDER

15-cv-051-jdp

---

Pro se plaintiff Richard Lewis is an inmate incarcerated at the Columbia Correctional Institution (CCI), a Wisconsin state prison. Lewis contends that defendants, corrections officers at CCI, subjected him to an improper strip search that violated his rights under the Fourth and Eighth Amendments. Lewis alleges that the officers conducted the strip search in view of another inmate and that one of the officers, defendant Michael Stephen, inappropriately touched his anus during the search.

Both sides move for summary judgment. I will deny Lewis's motion, Dkt. 19, because defendants have submitted evidence showing that the strip search was justified and that the officers adequately protected Lewis's privacy. Defendants' evidence raises genuine disputes of fact concerning the conduct of the search. Defendant's motion, Dkt. 30, presents a closer call. Lewis concedes many of the material facts concerning the circumstances leading up to the search, and a video of the search confirms most of defendants' version of the facts. But a core factual dispute remains: Lewis says that Stephen inappropriately touched his anus during the search; Stephen denies that he did so. The video is inconclusive because it was shot from an angle that does not show the relevant details.

I will grant defendants' motion on Lewis's Fourth Amendment claim because the touching of Lewis's anus does not transform a lawful prison strip search into an unreasonable search. I will also grant defendants' motion for summary judgment on Lewis's Eighth Amendment claim concerning the location and visibility of the search because defendants adequately protected his privacy during the search. But I will deny defendants' motion with respect to Lewis's Eighth Amendment claim concerning the manner of the search. Viewing the evidence in the light most favorable to Lewis as I must, Lewis's testimony that officer Stephen inappropriately touched Lewis's anus supports the inference that the search was conducted in a manner intended to humiliate Lewis. Lewis will certainly face a difficult challenge at trial, because his version of the facts is not credibly corroborated by any other evidence. But I conclude that he is entitled to present his Eighth Amendment claim to jurors, who could conceivably choose to believe his account rather than officer Stephen's.

## UNDISPUTED FACTS

Except where noted, the following facts are established as undisputed by the parties' summary judgment evidence.

**A. The parties**

Plaintiff Richard Lewis is an inmate at the Columbia Correctional Institution (CCI). Defendants are CCI correctional officers who conducted the contested strip search in the Segregation Unit at CCI. Defendant Theodore Anderson ordered the strip search; defendant Bryan Gerry restrained Lewis during the search; defendant Michael Stephen performed the material part of the search, namely touching and manipulating Lewis's body to search for contraband.

**B. Strip search policies at CCI**

At CCI, inmates are strip searched whenever they change "status," such as when they move into segregation or into an observation cell. CCI has two types of strip searches: (1) self-directed strip search and (2) staff-assisted strip search. In a self-directed strip search, the inmate can remove his own clothing and move his own body parts at the direction of CCI staff members. The staff members do not touch private parts of the inmates' bodies during a self-directed strip search.

If an inmate is resistant or uncooperative, the strip search will be staff assisted while the inmate is restrained. In a staff-assisted strip search, a staff member removes the inmate's clothing and checks the inmate's body, including mouth, hair, ears, fingers, armpits, and feet. The staff member also checks the inmate's private areas, including the inmate's scrotum and buttocks, using "bladed hands." The term "bladed hands" means that the staff member keeps his fingers together and the palm and fingers flat as if he were laying his hand flat on the table. The staff member uses the side of the hand away from the thumb to slide under or between areas of the inmate's body to search for any contraband. All staff-assisted strip searches are video recorded.

In the Segregation Unit at CCI, the staff members conduct strip searches near the shower area in the Segregation Unit. The cells within the Segregation Unit have window covers that the staff members can close, which would prevent other inmates from seeing outside their cells.

**C. The staff-assisted strip search of Lewis**

On October 17, 2014, defendant Stephen heard from another staff member that Lewis was threatening to hang himself. Stephen went to Lewis's cell and saw Lewis with a

3

bedsheet draped around his neck and standing on his sink. Stephen asked Lewis to remove the bedsheet and step down from the sink, but Lewis refused. Moments later, other staff members including defendant Gerry arrived at Lewis's cell with shields. Stephen and Gerry both gave Lewis several orders to remove the bedsheet, but Lewis told them that he did not want to live anymore and that he was going to jump. Lewis was eventually persuaded to come down from his sink and to remove the bedsheet from his neck. Because Lewis had attempted to harm himself, Anderson placed Lewis in "observation status," and pursuant to policy a strip search was necessary. Dkt. 33, ¶ 9-10.

Before escorting Lewis to the shower area for a strip search, Anderson ordered Lewis to kneel so that Lewis's legs could be restrained. Lewis complained that he had a medical condition that caused him to suffer excruciating pain if he were to kneel. According to Lewis, Anderson yelled at Lewis while he gave the order to kneel; defendants dispute this allegation. Lewis eventually complied with Anderson's order and had his legs restrained.

Defendants and other staff members then escorted Lewis to the shower area for a strip search. Defendants have provided a diagram of the Segregation Unit to show where they conducted the search. Dkt. 33-2. A copy is attached at the end of this opinion. The letter "S" on the diagram indicates the location where defendants conducted the strip search, which is right outside the shower. As Lewis points out, Dkt. 47, ¶ 46, the diagram is not completely accurate, because the wall of the shower is actually in line with the walls of Cells 11 through 16. The video of the search confirms that Lewis is correct. This is a relatively minor detail, but the correction shows that it is easier for the inmate in Cell 21 to see the area where the strip search occurred. Defendants concede that "it was possible" that the inmate in Cell 21 "could have seen glimpses of the search." Dkt. 28, ¶ 15. The parties agree, however, that

4

among the spaces available in the Segregation Unit, the shower unit offers the most privacy for inmates and allows safety for staff members. Dkt. 47, ¶ 7.[1]

Once in the shower area, Lewis was again ordered to kneel so that his leg restraints could be removed, and Lewis complained again about the pain. Although Lewis did not refuse to undergo a strip search at first, once the staff members removed Lewis's leg restraints, Lewis became belligerent towards the staff members. Dkt. 26, ¶ 9. Lewis said to the staff members that they would "have to fight [Lewis] because [he] ain't coming out" to the shower door for a strip search. Dkt. 47, ¶ 24. Lewis also said that the staff members "would need to use force on him," *id.* at ¶ 25, and that "he was going to make them gas and taze him," Dkt. 28, ¶ 9. Based on Lewis's defiant statements, Anderson determined that a staff-assisted search was necessary and directed another staff member to retrieve a video camera to record the search.

Once the video camera arrived, the strip search began. The video and the parties' affidavits show that there were five CCI staff members present during Lewis's strip search: (1) Anderson, who ordered the strip search and observed the search; (2) Gerry, who held one of Lewis's arms; (3) another staff member, who held Lewis's other arm; (4) Stephen, who checked Lewis's body for contraband; and (5) another staff member, who operated the video camera. The video of the strip search shows Lewis facing a wall. Anderson directed Gerry and another staff member to restrain Lewis, and Stephen removed Lewis's clothing. After the search, the staff members placed a towel around Lewis's lower body.

---

[1] During the investigation over Lewis's offender complaint, Lewis did not state that another inmate could see the strip search. According to Lewis, he did not include this detail because he did not know that a search in an open area was illegal. When he filed his complaint in this action, he alleged that the search took place in plain view of other inmates. He now contends that only one inmate could see the search.

5

The critical issue—which the parties dispute—is what happened during the few seconds when Stephen checked Lewis's buttocks. The video of the search is inconclusive because it is shot from an angle that does not show the details that matter here. It is worth pointing out that Lewis remains calm and does not visibly react when Stephen searches between his buttocks, but shortly after he says: "Man, that's sexual harassment, man. You're not supposed to spread my cheeks. I could have squatted." Dkt. 33-3 (video 4:19-29).

Determining what really happened is complicated by the fact that Lewis's version of the facts has changed several times. Right after the strip search, Lewis filed an offender complaint at CCI. In that complaint, he alleged that Stephen used his hand to spread Lewis's buttocks while "his thumb went down and up real quickly between my rectum area close to my butt hole but not inside the hole." Dkt. 33-4, at 11. Lewis's offender complaint led the prison officials to conduct an investigation, during which Lewis again denied being penetrated. Dkt. 33-1, at 13. But in his complaint in this case, Lewis alleged that Stephen "used his hands and spread Lewis's buttock apart and inserted his finger therein as part of his strip search." Dkt. 1, ¶ 5. He made the same allegation in his declaration in support of his motion for summary judgment. Dkt. 21, at ¶ 11 ("He then used his hands to spread my buttock and inserted his finger in my Anus.").

In support of defendants' motion for summary judgment, Stephen contends that he slid the side of his bladed hand through the area between Lewis's buttocks to search for contraband, but he denies that his finger penetrated Lewis's anal cavity. Dkt. 34, ¶14. In response, Lewis has recast his allegations, reverting to a version that is closer to that presented in his original offender complaint. In his summary judgment reply, Lewis says:

> However, Lewis now clarifies that although Sgt. Stephen's finger did not completely penetrate his anus cavity, it did slightly

6

> penetrate it and he did not provide this information at the time of his interview and Complaint, because he was humiliated and did not want to admit it.

Dkt. 40, at 3. His second declaration says:

> At the time of the staff assisted strip search, Sgt. Stephen finger did not completely penetrate my anal cavity, however it did slightly, and it was only because I was embarrassed and humiliated, I did not admit he had penetrated me at all.

Dkt. 43, ¶ 5.

In light of Lewis's clarification, the parties are not terribly far apart on what happened while Stephen checked between Lewis's buttocks. It is now clear that Stephen did not insert his finger into Lewis's anus as part of the strip search, as alleged in the complaint. But in considering defendants' motion for summary judgment, I must construe the disputed evidence in the light most favorable to Lewis. Accordingly, for the purposes of this motion, I assume that Stephens touched Lewis's anus with his finger, in a manner inconsistent with the "bladed hands" technique.

## ANALYSIS

Lewis asserts three claims. First, Lewis contends that defendants conducted an unreasonable search under the Fourth Amendment because, during the strip search, Stephen's finger touched or slightly penetrated Lewis's anus. Second, Lewis contends that the same contact was unconstitutional under the Eighth Amendment because it was calculated to humiliate and not motivated by a legitimate penological interest. Third, Lewis contends his Eight Amendment rights were violated because the strip search was unnecessarily conducted in view of another inmate. The parties cross-move for summary judgment on all three claims.

7

The familiar summary judgment standards apply. A court may grant summary judgment when no genuine issue of a material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine issue of a material fact "arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008). Although the court must view the evidence in a light most favorable to the nonmoving party, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And inferences that rely on speculation or conjecture are insufficient to survive summary judgment. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

## A.  Fourth Amendment claim

For many good reasons, inmates give up a great deal of privacy while incarcerated, and thus they have limited Fourth Amendment protections in prison. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984); *United States v. Shaw*, 824 F.3d 624, 629 (7th Cir. 2016); *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1998). Under most circumstances, a strip search would not violate an inmate's Fourth Amendment rights. But nevertheless, "the Fourth Amendment protects, to some degree, prisoners' bodily integrity against unreasonable intrusions *into* their bodies." *King v. McCarty*, 781 F.3d 889, 900 (7th Cir. 2015) (emphasis in original). The kinds of bodily intrusions recognized as implicating the Fourth Amendment have included involuntary catheterization and abdominal surgery. *See Sparks v. Stutler*, 71 F.3d 259, 260-61 (7th Cir. 1995); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 44-48 (1st Cir. 2009). Thus, in *King*, the Seventh Circuit rejected an inmate's Fourth Amendment claim

8

when the search was entirely visual and did not involve any bodily intrusion. *King*, 781 F.3d at 900.

At the screening stage, I allowed Lewis to proceed on his Fourth Amendment claim because he had alleged that one of the defendant officers penetrated his anus with a finger as part of a strip search. Dkt. 5. Under *King*, a visual strip search of an inmate would not violate the Fourth Amendment, but a strip search that involves bodily intrusion might. So I allowed Lewis to proceed with his Fourth Amendment claim. But now, at summary judgment, Lewis has clarified that he was *not* subject to a digital penetration. He contends instead that he was touched in an intimate place in an offensive manner, but that is an Eighth Amendment issue. And although Lewis's claim may present slightly closer case than *King* in the sense that Lewis's search involved *some* touching, no court has held that slight unwanted touching during a strip search amounts to a bodily intrusion for the purposes of the Fourth Amendment. Because he no longer contends that he endured a body cavity search, Lewis's Fourth Amendment claim fails just as King's did.[2]

Judge Hamilton's concurrence in *King* questioned whether the precise boundary of the Fourth Amendment should be drawn at bodily intrusion. Judge Hamilton reasoned that an inmate retains some limited privacy interest protected by the Fourth Amendment that a strip search could violate, and he cited the law of other circuits so holding. *King*, 781 F.3d at 903.

---

[2] Body cavity searches, if justified by penological need, would be allowed under the Fourth Amendment. *See, e.g.*, *Isby v. Duckworth*, No. 97-3705, 1999 WL 236880, at *2 (7th Cir. 1999). But as a matter of policy in Wisconsin prisons, body cavity searches are performed by medical staff, not corrections officers. Wis. Admin. Code DOC § 306.17(3)(b). So if officer Stephen had conducted a digital rectal search, the reasonableness of that search would be in doubt, which might raise Fourth Amendment concerns. That is not the case here.

But even this more inmate-friendly view of the Fourth Amendment would not help Lewis, because the undisputed facts show that the staff-assisted strip search was well justified here.

To determine whether a search was reasonable, the court must balance "the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *accord Banaei v. Messing*, 547 F. App'x 774, 776 (7th Cir. 2013). In this balancing inquiry, the court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559. This inquiry does not require prison officials to have used the least intrusive alternative. *See Sparks*, 71 F.3d at 261-62. And even under this objective reasonableness inquiry, the inmate still faces an uphill battle, because the court must give prison officials "considerable deference" in deciding matters involving safety and security, unless "substantial evidence" demonstrates that their response to the situation was exaggerated. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 132 S. Ct. 1510, 1518 (2012); *King*, 781 F.3d at 899; *Green v. Hallam*, 105 F. App'x 858, 860 (7th Cir. 2004). Determining the need for a search and the manner of conducting that search are decisions reserved for the prison officials. *Del Raine v. Williford*, 32 F.3d 1024, 1041-42 (7th Cir. 1994).

Anderson had good reason to order that Lewis be placed in observation status: Lewis had threatened to kill himself. By CCI policy, which Lewis does not challenge, Anderson thus ordered that Lewis be strip-searched to ensure that he did not carry contraband into the observation cell. Anderson also had good reason to order the staff-assisted search: Lewis was demonstratively hostile and defiant. Lewis admits that he became belligerent towards the staff members after they removed his leg restraints, Dkt. 28, ¶ 9, that he told the staff

members that they would "have to fight [Lewis]" Dkt. 47, ¶ 24, that they "would need to use force on him," Dkt. 47, ¶ 25, and that he would "make them gas and taze him," Dkt. 28, ¶ 9. Lewis later offered his cooperation in the search, but his recent hostility gave Anderson good reasons to keep Lewis in restraints and conduct a staff-assisted search.

Because the undisputed facts show that there was no bodily intrusion, and the staff-assisted search was not unreasonable, defendants are entitled to summary judgment on Lewis's Fourth Amendment claim.

**B. Eighth Amendment claim—motivation and manner of the search**

Lewis also contends that Stephen's conduct of the search—the touching of Lewis's anus—violated the Eighth Amendment because it was calculated to humiliate Lewis.

An inmate can prevail on an Eighth Amendment claim if the strip search was "motivated by a desire to harass or humiliate rather than by a legitimate justification." *King*, 781 F.3d at 897. Unlike the objective reasonableness analysis under the Fourth Amendment, the inquiry under the Eighth Amendment includes a subjective component: Lewis must prove that defendants conducted the search for the purpose of humiliating Lewis. *See id.* at 899 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). That is, only "calculated harassment" or "maliciously motivated" conduct unrelated to institutional security can amount to a violation of the Eighth Amendment. *Green*, 105 F. App'x at 862 (citing *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004)); *Sparks*, 71 F.3d at 262 ("The eighth amendment's mental-state requirement . . . supplies protection for honest errors.").

So even if a strip search of Lewis would have been justified, the strip search might still violate Lewis's Eighth Amendment rights, if it were "conducted in a harassing manner intended to humiliate and cause psychological pain." *Mays v. Springborn*, 575 F.3d 643, 649

(7th Cir. 2009); *Fillmore v. Page*, 358 F.3d 496, 505 (7th Cir. 2004); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). This is ultimately a question about Stephen's state of mind, a question generally reserved for the jury. *See Mays*, 719 F.3d at 633-34.

To support his contention that Stephen's touching of his anus was intended to humiliate him, Lewis relies on evidence that Anderson harbored animus toward Lewis. Lewis had filed a complaint against Anderson a week before the strip search and he contends that Anderson yelled at him when he refused to kneel on the day of the search. But Lewis has not shown why Stephen would hold any animus toward him. Lewis points to no evidence—nor does he even allege—that Anderson had instructed or encouraged Stephen to humiliate Lewis. The record does not support any inference that Stephen's conduct was related to any animus that Anderson might have had against Lewis.

The video of the search does not lend much support for Lewis's version of the facts either. During the critical few seconds while Stephen checks his buttocks, Lewis does not visibly react. A moment later he says: "Man, that's sexual harassment, man. You're not supposed to spread my cheeks. I could have squatted." Dkt. 33-3 (video 4:19-29). Stephen acknowledges that he spread Lewis's buttocks, which is part of the procedure of a staff-assisted search. But Lewis said nothing at the time about any inappropriate touching or penetration of his anus. And Lewis did not say anything about the touching or penetration of his anus in his offender complaint. As far as the record shows, the first time Lewis mentions penetration of his anus was in the filing of his complaint in this case. And even that allegation has been substantially retracted in Lewis's summary judgment filings.

Lewis's case is not a very persuasive one, but the court's task on summary judgment is not to evaluate the merits of Lewis's case. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920

(7th Cir. 1994). The question is only whether Lewis has adduced admissible evidence that would raise a dispute as to a material fact, thus requiring trial. *Id*. And that Lewis has done: he presents his own testimony that Stephen touched his anus in a manner inconsistent with a proper staff-assisted strip search. Although Lewis does not articulate with precision how Stephen touched his anus, he describes the contact as a sexual assault. If proven true, the inappropriate touching could support a reasonable inference that Stephen touched Lewis to harass or humiliate him. Stephen denies Lewis's allegation, but the jury will have to decide who is telling the truth.

Defendants' motion for summary judgment on this claim is denied.

**C. Eighth Amendment claim—visibility of the search**

Lewis asserts a separate Eighth Amendment claim based on the theory that defendants conducted the strip search to humiliate Lewis because the search took place in an area where another inmate could see the strip search.

Any strip search conducted for the purpose of humiliating the inmate would violate the Eighth Amendment, and one way of making a strip search humiliating would be to conduct it in public. That is the essential point of *King*, in which an inmate was garbed in a nearly see-through jumpsuit with his genitals exposed and transported in that state in front of other inmates and guards of both sexes. *See King*, 781 F.3d at 897-98.

But Lewis was not publicly humiliated here. Lewis was strip searched in the shower area, which parties agree was the most private space in the segregation unit. Lewis's relies chiefly on the officers' failure to cover the cell windows in the segregation unit, but only Cell 21 afforded any view of the shower area; defendants concede that the inmate in Cell 21 might have been able to observe parts of the strip search. But even that view from Cell 21

13

was mostly occluded by the officers conducting the search. And based on the diagram of the segregation unit and the video of the search, the officer who recorded the search would have substantially blocked Cell 21's view of the search.[3]

The Eighth Amendment does not require that strip searches be conducted in complete privacy. Rather, it requires only that strip searches serve a legitimate penological need and that they not be conducted to harass or humiliate inmates. The officers searched Lewis in the most private area within the segregation unit. Only one other inmate could, at most, catch glimpses of the search. No reasonable jury could conclude on the basis of such minimal exposure that the officers conducted the search in view of other inmates to harass or humiliate Lewis.

Defendants' motion for summary judgment on this claim is granted.

CONCLUSION

The case will proceed to trial solely on the question whether defendant Stephen's conduct of the search violated Lewis's rights under the Eighth Amendment.

---

[3] Part of the declaration of inmate Booker Brown is incredible as a matter of law. Brown contends that he saw an officer spread Lewis's buttocks and insert his finger into his rectal cavity. Dkt. 22, ¶ 8. The video of the search demonstrates that it would have been impossible for Brown to see this detail, as the bodies of the officers who conducted the search blocked Brown's view.

ORDER

IT IS ORDERED that:

1. Lewis Richard Lewis's motion for summary judgment, Dkt. 19, is DENIED.

2. Defendants Michael Stephen, Theodore Anderson, and Bryan Gerry's motion for summary judgment, Dkt. 30, is GRANTED in part and DENIED in part.

Entered November 9, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

CCI Segregation Unit

